

SO ORDERED,

Judge Jason D. Woodard

United States Bankruptcy Judge

**The Order of the Court is set forth below. The case docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WILLIE D. JUSTICE, | ) | Case No.:   14-13684-JDW |
| | ) | |
| Debtor. | ) | Chapter:   7 |

_____

| | | |
|---|---|---|
| WILLIE D. JUSTICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | A.P. No.:   15-01083-JDW |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding came before the Court for trial on October

25, 2016, on the Complaint (A.P. Dkt. # 1),[1] filed by the debtor-plaintiff,

---

[1] Citations to the docket in the main bankruptcy case will be to "Bankr. Dkt. #___" and
citations to the adversary proceeding will be to "A.P. Dkt. #___".

Willie Justice (the "Plaintiff"), against the U.S. Department of Education and various other entities.  Educational Credit Management Corporation (the "Defendant"), who was not named in the Complaint, filed an answer, and the parties have stipulated that the Defendant has been assigned all of the Plaintiff's student loan obligations that are at issue in this adversary proceeding (A.P. Dkt. # 33).  As a result, the parties agreed at trial that the Defendant is the only proper defendant.  As such, the U.S. Department of Education, American Education Services, Ed Financial Services and Kentucky Higher Education have now been dismissed (A.P. Dkt. # 42).

The Plaintiff contends that his student loan debt imposes an undue hardship on him, and he seeks a determination that his student loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8).[2]  At the trial on October 25, 2016, the Plaintiff appeared and proceeded *pro se*.  Robert Byrd appeared as counsel for the Defendant. The Court heard arguments, received documents into evidence, and heard testimony from the Plaintiff.  After a careful review of the evidence, the pleadings, and the applicable law, this Court finds and concludes that the Plaintiff has failed to carry his burden and that the Plaintiff's student loan debts remain nondischargeable.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the "Bankruptcy Code," 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## I.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984.  This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(I) and (O).

## II.  FINDINGS OF FACT[3]

The Plaintiff is a 43-year-old male who resides in Corinth, Mississippi. He is a deputy clerk with the Alcorn County Chancery Court where he has been employed for over 20 years.  He currently lives in the house he inherited from his mother, free and clear of any liens or encumbrances.  He has no dependents.  The Plaintiff owns a 2008 BMW 528i, for which he pays $389.25 per month plus $165.63 per month for car insurance, together totaling $6,658.56 per year.

The Plaintiff provided a current calculation of his income and expenses at trial by using schedules I and J of the official bankruptcy forms.[4]  Along with the up-to-date schedules, he also had admitted various bills into the

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

[4] These trial exhibits were not the bankruptcy schedules filed in his bankruptcy case.  The Plaintiff simply used the bankruptcy forms to create an updated snapshot of his current income and expenses.

record to show recent fluctuations in his expenses.  The updated schedules I and J reflect that the Plaintiff has monthly income of $1,738.04 and monthly expenses of $2,525.29.  From the additional bills submitted to the Court, he has experienced only minor adjustments that are not included in the schedules.

In 1995, the Plaintiff enrolled at the University of North Alabama ("UNA"), and in 2000 he graduated with a Bachelor of Science.  Between 2003 and 2007, he continued his education at UNA as a full-time and part-time student, seeking to obtain a Master's degree in English.  In 2007, he withdrew from school and never completed the course requirements for the Master's degree.  Also in 2007, the Plaintiff's mother broke her hip.  From this point forward, her health began deteriorating, and the Plaintiff began caring for her.  In March of 2015, the Plaintiff's mother passed away.

As of October 12, 2016, the Plaintiff owed $119,670.39 in student loan debt, of which $114,116.03 was principal. He has never made a payment.  Instead, the Plaintiff had his loans repeatedly deferred or placed in forbearance until he filed bankruptcy in 2014.  For this reason, it is uncertain what his monthly payment on the student loan debt would be, although the Court can approximate the payment based on the principal amount due divided by the standard repayment period of twenty-five years.  Such a

calculation would result in a $380 per month payment, plus accrued and accruing interest.

The Plaintiff never applied for the Income Contingent Repayment Plan, Income-Based Repayment Plan, Public Service Loan Forgiveness Program or any other repayment program available through the William D. Ford program. *See, e.g.,* 34 C.F.R. §§ 685.209 (income-contingent repayment plans), 685.219 (Public Service Student Loan Forgiveness Program), 685.221 (income-based repayment plan). The Plaintiff has not given a reason for not applying for these programs, other than stating that he was not required to do so. Through the Public Service Loan Forgiveness Program, the Plaintiff could potentially pay an estimated $58 per month and have his remaining student debt forgiven in ten years.[5]   This program is just one of several programs that may be available to the Plaintiff. All of these remedies lie outside of the bankruptcy system.

The Plaintiff, proceeding *pro se*, filed a chapter 7 bankruptcy petition on October 1, 2014 (Bankr. Dkt. # 1). His case was a simple no-asset case with his main debts being from student loans. On January 6, 2015, he received a discharge (Bankr. Dkt. # 10). During the bankruptcy case, the Plaintiff never commenced an adversary proceeding seeking a determination that his student loan debt was dischargeable. The case was closed on

---

[5] 34 C.F.R. § 685.219.

January 12, 2015 (Bankr. Dkt. # 12). In March of 2015, he moved to reopen his bankruptcy case for the purpose of filing an adversary proceeding to declare his student loan debts to be dischargeable (Bankr. Dkt. # 14). His case was reopened on June 1 (Bankr. Dkt. # 16), and he filed his adversary proceeding on September 25, 2015 (Bankr. Dkt. # 23, A.P. Dkt. # 1).

## III.  CONCLUSIONS OF LAW

Student loan debt, as a general rule, is nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(8). In contradistinction to most exceptions to discharge, § 523(a)(8) is "self-executing" and "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tenn. Student Asst. Corp. v. Hood,* 541 U.S. 440, 450 (2004). For this reason, the burden falls on the debtor. *Salyer v. Sallie Mae Servicing Corp.* (*In re Salyer),* 348 B.R. 66, 70 (Bankr. M.D. La. 2006). A debtor must file an adversary proceeding and prove that his student loan debts "impose an undue hardship on the debtor and the debtor's dependents" in order to receive a discharge on student loan debts. 11 U.S.C. § 523(a)(8).

Section 523(a)(8) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

6

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--

    (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

        (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

    . . .

11 U.S.C. § 523(a)(8). Here, there is no dispute that the loans were student loans. The only issue is whether repayment of the loans would impose an undue hardship on the Plaintiff. In making this determination, most courts—including the U.S. Court of Appeals for the Fifth Circuit—have adopted what is commonly known as the *Brunner* test. *U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt),* 348 F.3d 89, 91 (5th Cir. 2003). The *Brunner* test has three elements:

    (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans;

    (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

    (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Educ. Services Corp*, 831 F.2d 395, 396

(2d Cir. 1987).  "The debtor bears the burden of proving all three elements by

a preponderance of the evidence." *Salyer,* 348 B.R. at 70.

It is important to note that these are elements, not factors. *Salyer,* 348

B.R. at 70.  At trial, the Plaintiff was seemingly under the impression that

the three *Brunner* elements were factors and even freely admitted that he

has not met all of the prongs of the *Brunner* test.  On the contrary, all three

elements must be proven, and if the "debtor fails to prove even one of these,

the inquiry ends and the student loan cannot be discharged." *Id.*  In this

case, the Plaintiff has not been able to prove any of the three *Brunner*

elements.[6]

## A.    Minimal Standard of Living

The first element of the *Brunner* test is "that the debtor cannot

maintain, based on current income and expenses, a minimal standard of

living for herself and her dependents if forced to repay the loans." *Brunner,*

831 F.2d at 396.  There is no specific formula for determining the "minimal

standard of living" for each debtor, and courts have used different standards

to calculate the minimal standard.  One standard is to determine what

---

[6] The Plaintiff relies on *Acosta-Conniff v. ECMC (In re Acosta-Conniff)*, 536 B.R. 326
(Bankr. M.D. Ala. 2015).  However, as was pointed out by counsel for the Defendant during
trial, the bankruptcy court's decision in *Acosta-Conniff* was reversed by the district court.
*ECMC v. Acosta-Conniff,* 550 B.R. 557 (M.D. Ala. 2016).

amount is "minimally necessary to ensure that the debtor's needs for care,
including food, shelter, clothing, and medical treatment, are met," and then
to ask "whether the debtor has additional funds with which to make
payments towards student loans." *Wynn v. Educ. Credit Mgmt. Corp. (In re
Wynn),* 378 B.R. 140, 148 (Bankr. S.D. Miss. 2007) (quoting *Gill v. Nelnet
Loan Services, Inc. (In re Gill),* 326 B.R. 611, 626 (Bankr. E.D. Va. 2005)).
Another court adopted a similar approach: "the debtor must show that her
financial resources will allow her to live only at a poverty level standard for
the foreseeable future if she is obligated to repay the student loan." *Cadle
Co. v. Webb (In re Webb),* 132 B.R. 199, 202 (Bankr. M.D. Fla. 1999).

A bankruptcy court in the Southern District of Mississippi has noted
that, while not controlling, "several courts have held that the minimal
standard of living is at or near the poverty level," and "the federal poverty
guideline is a useful yardstick for determining what is a minimal standard of
living." *Knox v. Sallie Mae (In re Knox),* 2007 WL 3332060 at *5 (Bankr. S.D.
Miss. Nov. 6, 2007). The Bankruptcy Code does not, however, "require that
the debtor live in abject poverty before a student loan may be discharged."
*O'Donohoe v. Panhandle-Plains Higher Educ. Authority (In re O'Donohue),*
2013 WL 2905275 at *3 (Bankr. S.D. Tex. 2013).

The "minimal standard of living" element also requires the debtor to
demonstrate that he or she is attempting to "minimize living expenses and

9

maximize financial resources." *Webb,* 132 B.R. at 202. For this reason, the court in *Knox* held that the debtors failed to satisfy the first prong because they did not prove they had maximized their income and minimized their expenses. *Knox,* 2007 WL 3332060 at *4. The debtors there were paying for four cell phones, high speed internet and cable, which the Court found to be "unnecessary expenses." *Id.*

The Plaintiff here has conceded that he has been able to maintain a minimal standard of living. The Plaintiff testified: "with my income and the bills that I have had…you have to maintain a minimal standard of living. And I'm doing that but it's hard…." He also conceded that he is "not at the poverty level." The Plaintiff's trial exhibits confirm these statements. The Plaintiff has listed his current income as $29,568 per year, which is approximately 250% of the federal poverty level for a single person with no dependents. *Annual Update of the HHS Poverty Guidelines,* FEDERAL REGISTER, 81 F.R .4036 (2016), https://www.federalregister.gov/documents/2016/01/25/2016-01450/annual-update-of-the-hhs-poverty-guidelines. Further, the Plaintiff has not shown any effort to increase his earnings. He testified that he had a second job at one point in time but was forced to leave that job because of his class schedule. He is no longer enrolled in school and no evidence was provided about whether a second job could now be obtained. Beyond that, the Plaintiff

10

gave no indication that he has made efforts to secure a higher-paying job.

The Plaintiff received a bachelor's degree from UNA but has not shown that

he ever sought employment in a field related to his degree. Regarding his

expenses, he has a somewhat excessive car note, car insurance and car tag

expense due to his choice to drive a luxury car. Other than his car expense,

however, the Plaintiff's expenses appear to be reasonable. That said, the

Plaintiff has not shown that his expenses have been minimized.

Due to admissions made by the Plaintiff, and the lack of evidence

provided about maximizing income and minimizing expenses, the Court finds

that the first element has not been satisfied. This alone is fatal to the

Plaintiff's claim under § 523(a)(8); however, the Court will nonetheless

analyze the other two elements as well.

## B.    Persistent State of Affairs

Under the second element, the Plaintiff must prove that "additional

circumstances exist indicating that this state of affairs is likely to persist for

a significant portion of the repayment period of the student loans." *Brunner*,

831 F.2d at 396. This element is the "heart of the *Brunner* test" and is meant

to be a "demanding requirement." *Educ. Credit Mgmt. Corp. v. Frushour (In

re Frushour),* 433 F.3d 393, 401 (4th Cir. 2005); *In re Brightful,* 267 F.3d 324,

328 (3d Cir. 2001). The "additional circumstances" required in the second

prong encompass "circumstances that impacted on the debtor's future

11

earning potential but which were either not present when the debtor applied for the loans or have since been exacerbated." *Gerhardt,* 348 F.3d at 92 (quoting *In re Roach,* 288 B.R. 437, 445 (Bankr. E.D. La. 2003)).

This element is forward-looking: the hardship must be "likely to persist for a significant period of time." *Id.* (quoting *Brunner,* 831 F.2d at 396. Proving that the debtor is currently having a financial crisis is not enough; instead the debtor must show "a total incapacity in the future to pay his debts for reasons not within his control." *Id.* (quoting *In re Faish,* 72 F.3d 298, 307 (3d Cir. 1995). As one court put it, *Brunner* requires "a certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Olyer v. Educ. Credit Mgmt. Corp. (In re Olyer),* 397 F.3d 382, 386 (6th Cir. 2005). In determining whether the debtor's financial situation is likely to improve, the Court should consider "the debtor's age, education, work history, health, assets, ability to obtain a higher paying job or reduce expenses and other circumstances." *In re Pratt,* 375 B.R. 753, 761 (Bankr. S.D. Tex. 2007).

In reference to this element, the Plaintiff credibly testified that taking care of his mother was emotionally and financially draining and that when she passed away he was forced to pay the funeral expenses and other related costs. This situation was no doubt difficult for the Plaintiff, but all of these events happened in the past and will not persist in the future. While the Court is sympathetic to the Plaintiff's loss, the fact remains that the Plaintiff

has no dependents, financially or otherwise.  The Plaintiff has not become

disabled or otherwise hindered from completing his job duties. Additionally,

the funeral expenses the Plaintiff incurred were a one-time expense that will

not persist in the future.  Accordingly, the Plaintiff has failed to satisfy this

element.

### C.    Good Faith Effort to Repay

The third element requires the Court to "consider the Debtor's 'efforts

to obtain employment, maximize income, and minimize expenses.'" *Russ v.*

*Tex. Guaranteed Student Loan Corp., (In re Russ),* 365 B.R. 640, 654 (Bankr.

N.D. Tex. 2007)(internal quotations omitted).  This good faith standard

stands for the "notion that the debtor may not willfully or negligently cause

his own default, but rather his condition must result from factors beyond his

reasonable control." *In re McMullin,* 316 B.R. 70, 78 (Bankr. E.D. La. 2004).

The Plaintiff has failed to provide any evidence to prove he has made a

good faith effort to repay his student loans.  He began incurring student loan

debt in 1995 and has yet to make one payment.  With the amount of time

that has lapsed since the inception of the loans and with no payments having

been made towards the loans in that time, the Plaintiff has not shown that he

has made any efforts to repay his loans.

When considering good faith, one factor is whether the debtor has taken

advantage of repayment programs available to him.  "A debtor's effort to seek

out loan consolidation options that make the debt less onerous is an important indicator of good faith." *Salyer,* 348 B.R. at 72. While this factor is not dispositive, "it illustrates that the debtor takes his obligations seriously, and is doing his utmost to repay them despite his unfortunate circumstances." *Frushour,* 433 F.3d at 402. One such program is the William D. Ford program, which is offered to debtors who cannot make their student loans payments. Failure to utilize the William D. Ford program is a factor that courts have often viewed as indicative of a failure to make a good faith effort to repay student loans. *Tollison v. Suntech, Inc. (In re Tollison),* 305 B.R. 656, 661 (Bankr. N.D. Miss. 2004); *Wynn,* 378 B.R. at 150.

Even though he has been made aware of these payment programs and their benefit, he conceded at trial that he has failed to pursue any of these remedies. He has sought and obtained numerous deferments and forbearances, but has never attempted repayment or sought a solution to ease the burden in a lasting way.

At trial the Plaintiff relied on two cases to rebut the view that enrolling in repayment programs should be an important factor under the third *Brunner* element: *In re Bronsdon,* 435 B.R. 791 (B.A.P. 1st Cir. 2010) and *In re Roth,* 490 B.R. 908 (B.A.P. 9th Cir. 2013). These two cases are unhelpful. In *Bronsdon,* the Bankruptcy Appellate Panel ("BAP") for the First Circuit adopted and applied the "totality of the circumstances" test, which is not used

14

in the 5th Circuit. 435 B.R. at 800.  In *Roth,* the BAP for the Ninth Circuit

considered the applicability of an Income-Based Repayment Plan ("IBRP") for

the debtor.  *Roth*, 490 B.R. at 919.  The Ninth Circuit BAP noted that a

debtor's refusal to enroll in an IBRP cannot be "discounted" and has "often

tipped the good faith balance against a debtor."  *Id.*  However, the debtor's

circumstances also had to be considered.  Because of the debtor's low income,

she would not have been required to make repayments under an IBRP at the

time; and, more importantly, "it [was] more probable than not she would

never be required to make a repayment."  *Id.*  Also, "her age, poor health, and

limited income or prospects" made her failure to take advantage of an IBRP

less impactful.  *Id.*  at 920.  Another consideration was the "disastrous tax

consequences" that could await the debtor at the discharge of her student

debt.  *Id.*  All of these facts led the court to find that the debtor's failure to

enroll in the IBRP should not be held against her.  *Id.*

The Plaintiff does not find himself in this position.  Rather, the evidence

reflects that the Plaintiff has potential to greatly benefit from a repayment

plan.  Further, unlike the debtor in *Roth*, the Plaintiff would likely be

required to make monthly payments under the applicable programs.[7]  As a

---

[7] Another difference between the Plaintiff and the debtor in *Roth* is that the Plaintiff would likely not face the "disastrous tax consequences" that were presented in that case.  *Roth*, 490 B.R. at 920.  If the Plaintiff is approved for the Public Service Loan Forgiveness Program, he would not be assessed with income tax when the student loan debt is forgiven upon completion of the program.  *See* I.R.S., *Canceled Debts, Foreclosures, Repossessions,*

result, the Plaintiff's failure to utilize one of the available repayment programs tips the good faith balance even further against the Plaintiff. This Court is of the view that while the failure to enroll in a repayment program is not determinative, it is indicative of a lack of good faith effort to repay the loans. Taken together with the rest of the evidence, the Court holds that the Plaintiff has failed to meet the third *Brunner* element.

## IV.  CONCLUSION

The Plaintiff has not met any of the *Brunner* elements, and failing to meet any one of these elements is fatal to his claim. Because the Plaintiff has not proven an undue hardship, the student loan debt in question is nondischargeable under § 523(a)(8).

The Plaintiff does have other options, however. He can pursue the repayment programs previously mentioned, and by doing so, has the opportunity to eliminate a substantial amount of his student loan debt through government programs, such as the Public Service Loan Forgiveness Program and other William D. Ford programs. His remedy lies not in bankruptcy, but in utilizing these repayment plans.

A separate final judgment will be entered in accordance herewith.

##END OF ORDER##

---

*and Abandonments (for Individuals),* Pub. 4681 at 4-5 (Jan. 11, 2016), https://www.irs.gov/pub/irs-pdf/p4681.pdf.